## Patterson *versus* Pittsburg and Connellsville Railroad Co.

1. In an action against a railroad company for injuries to the plaintiff by their negligence, he offered to prove: that he was a conductor of freight trains of defendants, that they had a siding, on which coal-cars were to be run out to empty coal on a platform, and it was his duty as conductor to run out on the siding the coal-cars brought with his train; that by reason of the shortness of the curve of the siding and its improper connection with the main road, it was dangerous to run the cars on the siding; that he had notified the superintendent and foreman of the railroad of such danger and they promised to repair the road so as to avoid it, and requested the plaintiff to continue till the repair was made; that nothing was done towards the repair, and while the plaintiff was running his train on the siding, using due care, the front car, by reason of the shortness of the curve, ran off the track, and the plaintiff on the second car was forced by the shock from the car and injured. The court below rejected the offer. *Held,* that it should have been received.

2. A master is not responsible for accidents to his servants from the ordinary risks incident to his business; it being presumed that the contract was made with reference to the risks.

3. If a master subjects his servant to dangers such as he ought to provide against, he is liable for any accident resulting from them.

4. The servant's primary duty is obedience, and if in the discharge of his duties he is damaged through the neglect of the master, the latter is liable for the injury.

| | |
|---|---|
| 76 | 389 |
| 128 | 199 |
| 76 | 389 |
| 139 | 50 |
| 76 | 389 |
| 147 | 480 |
| 76 | 389 |
| 151 | 518 |
| 76 | 389 |
| f198 | 319 |
| 76 | 389 |
| 201 | 285 |
| 76 | 389 |
| f217 | ²126 |
| 76 | 389 |
| 219 | ⁸408 |
| 76 | 389 |
| 38SC | ⁴593 |
| 76 | 389 |
| d39SC | 45 |
| e39SC | 46 |

5. The master is bound to furnish and maintain suitable instrumentalities for the duties required of his servants, and if he does not, he is liable for injuries from his neglect.

6. If the instrumentality by which the servant is to perform his duty is so obviously and immediately dangerous, that a man of common prudence would refuse to use it, the master is not liable for resulting damages; the servant being in such case guilty of concurrent negligence.

7. When the servant, in obedience to the master, incurs the risk of machinery, which though dangerous, is not so much so as to threaten immediate injury, or it is reasonably probable may be used safely by extraordinary caution, the master is liable for a resulting accident.

8. Where the defect in the machinery, &c., is of such a character or occurs at such a time that the master cannot reasonably be expected to have knowledge of it, it is the duty of the servant to give him notice; neglect of this relieves the master of responsibility.

9. In the case of a corporation such notice is to be given to the officer who has the care of the particular department; his negligence is the negligence of the company.

10. Ordinarily a notice by a servant to a subordinate, however extensive his authority, is not sufficient, he being but a fellow-servant.

11. Caldwell *v.* Brown, 3 P. F. Smith 453; Frazier *v.* Pennsylvania Railroad Co., 2 Wright 104, recognised and approved.

October 5th 1874. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the District Court of *Allegheny county:* No. 68, to October and November Term 1873.

This was an action on the case, brought April 26th 1866, by Elijah Patterson against The Pittsburg & Connellsville Railroad Company, for injuries to the plaintiff in consequence of the negligence of the defendants and their servants, as set forth in the offer of evidence by the plaintiff hereafter given.

After the jury was sworn, the plaintiff, at the request of the court and defendants' counsel, that he would submit in writing the evidence on which he relied, made the following offer:—

"Plaintiff proposes to prove by the witness, Elijah Patterson, and other witnesses, that the plaintiff, Elijah Patterson, in June or July 1869, was employed on the Pittsburg and Connellsville Railroad as a conductor of freight trains; that he brought coal-trains down the road with other freight. That defendants had in their use and occupation a switch, siding or branch road, near the Pittsburg depot of said road, on which coal-cars were to be run out, in order that the coal might be emptied on a platform, and that it was the duty of the conductor to run out coal-cars, which he had brought with his train, on said switch, siding or branch, that the same might be emptied on said platform. That, by reason of the shortness of curve on said side road or branch, and the improper construction of the frog, or connection with the main track, it was hazardous and dangerous to run said coal-cars out on said switch or siding, and that the plaintiff had notified the superintendent of the railroad, also the foreman of the road, of the said hazard and

[Patterson v. Pittsburg & Connellsville Railroad Co.]

danger, and the superintendent and foreman promised to repair the same, so as to avoid the hazard and danger, requesting the plaintiff to continue his work, observing proper care, until the defects could be remedied. That neither superintendent nor any one else took any steps to repair said defects, and while plaintiff was running a part of his train of coal-cars over said switch, with the brakemen on the train, in June or July 1864, using due care, the front car of the train, in consequence of the shortness of the curve, was forced from the track and fell to the ground.

" That the plaintiff, who was on the second car from the fore end of the train, which was also forced from the track, was, in consequence of the shock to the car in which he was, thrown down from the track, a distance of about twenty feet, and very seriously injured.

" That immediately after the accident and injury to the plaintiff, the defendants repaired the defects by lengthening the curve and changing the frog or connection, making the same safe and free from hazard."

The defendant's counsel objected to the foregoing offer as irrelevant and incompetent.

The offer discloses :—

"1. That the injuries complained of were received by the plaintiff while employed as a conductor on defendants' road, and were incident to his employment as such.

" 2. That the plaintiff, being fully aware of the condition of the switch, voluntarily continued to expose himself to the threatened danger, and was thereby guilty of such contributory negligence as will disable him from a recovery."

BY THE COURT: " The questions presented by the offer of the plaintiff are very difficult to determine, there being a number of decisions somewhat conflicting. But, as the case will undoubtedly be taken to the Supreme Court, let us decide as we may, we think we can save time and expense to the parties by sustaining the objections and rejecting the evidence. If the Supreme Court should decide that we have committed an error, one trial will end the case, and if our decision is found to be correct, the case will also be ended."

The objections were sustained, the evidence rejected, and this bill of exceptions sealed.

The verdict was for defendants.

The plaintiff took a writ of error and assigned for error the rejection of his offer of evidence.

W. S. Miller and R. B. Carnahan, for plaintiff in error.—The plaintiff having called attention of the proper officers to the dangerous condition of the switch, and under a promise to repair it and on a request to him to remain till it was done, having contin-

[Patterson *v.* Pittsburg & Connellsville Railroad Co.]

ued in the service, the defendants are liable, although he was one of their servants: Clarke *v.* Holmes, 7 Hurlstone & Norman 937; Snow *v.* Housatonic Railroad Co., 8 Allen 441. The defendants were bound to use ordinary care: Caldwell *v.* Brown, 3 P. F. Smith 456; O'Donnell *v.* Allegheny Valley Railroad Co., 9 Id. 239; Weger *v.* Pennsylvania Railroad Co., 5 Id. 465; Frazier *v.* Pennsylvania Railroad Co., 2 Wright 111.

*G. Shiras, Jr.,* for defendants in error.—Where persons are employed in the same general service and one of them is injured through the carelessness of another, the employer is not responsible: Ryan *v.* The Cumberland Valley Railroad Co., 11 Harris 384; Frazier *v.* The Pennsylvania Railroad Co., 2 Wright 110; Caldwell *v.* Brown, 3 P. F. Smith 453; Gilman *v.* Eastern Railroad Co., 10 Allen 233.

Mr. Justice GORDON delivered the opinion of the court, January 11th 1875.

The plaintiff made the following offer of evidence, to wit: That he was employed in June or July 1869, as a conductor of freight trains on the Pittsburg & Connellsville Railroad; "that he brought coal-trains down the road with other freight. That the defendants had in their use and occupation a switch, siding or branch road near the Pittsburg depot of said road, on which coal-cars were to be run out in order that the coal might be emptied on a platform, and that it was the duty of the conductor to run out coal-cars which he had brought down with his train, on said switch, siding or branch, that the same might be emptied on said platform. That by reason of the shortness of curve on said road or branch, and the improper construction of the frog, or connection with the main track, it was hazardous and dangerous to run said coal-cars out on said switch or siding, and that the plaintiff had notified the superintendent of the railroad, also the foreman of the road, of the said hazard and danger, and the superintendent and foreman promised to repair the same so as to avoid the hazard and danger, requesting the plaintiff to continue his work, observing proper care, until the defects could be remedied. That neither the superintendent nor any one else took any steps to repair said defects, and while plaintiff was running part of his coal-cars over said switch, with brakesmen on the train, in June or July 1869, using due care, the front car of the train, in consequence of the shortness of the curve, was forced from the track and fell to the ground. That the plaintiff, who was on the second car from the fore end of the train, which was also forced from the track, was, in consequence of the shock to the car in which he was, thrown down from the track a distance of about twenty feet, and very seriously injured."

The defendants' counsel objected to this offer: 1st. " Because

[Patterson v. Pittsburg & Connellsville Railroad Co.]

the injuries complained of were received by the plaintiff while employed as conductor on defendants' road, and were incident to his employment as such."

2d. " That the plaintiff, being .fully aware of the condition of the switch, voluntarily continued to expose himself to the threatening danger, and was thereby guilty of such contributory negligence as will disable him from a recovery." The court sustained the objections and overruled the offer.

We hold this action of the court to be erroneous. It is true the master is not responsible for accidents, occurring to his servant, from the ordinary risks and dangers which are incident to the business in which he is engaged; for in such case, the contract is presumed to be made with reference to such risks. But, on the other hand, where the master voluntarily subjects his servant to dangers, such as, in good faith, he ought to provide against, he is liable for any accident arising therefrom. In the case of Clarke v. Holmes, 7 Hurlst. & Nor. (Ex.) 937, it was ruled, that where one was employed to oil dangerous machinery, the guard or fence around which was broken, and of the dangerous character of which he had complained, the employer was liable for damages to the employee, arising from the defect complained of. In this case, though there was a statute requiring the fencing of hazardous machinery, the ruling was, nevertheless, put upon the general grounds of the master's duty not to subject his servant to extraordinary dangers which he ought to foresee and prevent. We have also a case in point, in Snow v. The Railroad, 8 Allen 441, where the company was held liable, to an employee, for an injury caused by the want of proper repairs in its road-bed. In both these cases, the defects, from which the accidents arose, were known to the employees, but as they were injured in the discharge of duties imposed upon them by their employers, such knowledge was adjudged not to raise a presumption of concurrent negligence. This doctrine is obviously just and proper. The servant does not stand on the same footing with the master. His primary duty is obedience, and if, when in the discharge of that duty, he is damaged, through the neglect of the master, it is but meet that he should be recompensed. The general principle, as recognised by our own cases, *inter alia*, Caldwell v. Brown, 3 P. F. Smith 453, and Frazier v. Penna. Railroad Co., 2 Wright 104, is, that the employer is bound to furnish and maintain suitable instrumentalities for the work or duty which he requires of his employees, and failing in this, he is liable for any damages flowing from such neglect of duty.

In this discussion, however, we are not to forget that the servant is required to exercise ordinary prudence. If the instrumentality by which he is required to perform his service, is so obviously and immediately dangerous, that a man of common prudence would refuse to use it, the master cannot be held liable for the resulting

[Patterson *v.* Pittsburg & Connellsville Railroad Co.]

damage. In such case the law adjudges the servant guilty of concurrent negligence, and will refuse him that aid to which he otherwise would be entitled. But where the servant, in obedience to the requirement of the master, incurs the risk of machinery, which though dangerous, is not so much so as to threaten immediate injury, or where it is reasonably probable it may be safely used by extraordinary caution or skill, the rule is different. In such case the master is liable for a resulting accident. The present case may be used as an example to illustrate what we mean. Let it be considered that the switch in question was dangerous, yet doubtless many trains had passed over it safely, and hence a man of common prudence might well conclude that, though it was more than ordinarily dangerous, yet many more trains might in like manner be passed over it safely. Under such a state of facts the conductor might properly rest upon the judgment of his superiors, who requested him to continue its use, hoping that by extra care and skill he might avert accidents, until the switch was reconstructed or properly repaired. On the other hand, if the defect was so great, that obviously, with the use of the utmost skill and care, the danger was imminent, so much so, that none but a reckless man would incur it, the employer would not be liable.

These, however, are questions which necessarily grow out of the facts of the particular case under consideration, and must therefore be referred to the jury.

Again, where the defect in the machine, or other appliance, from which the danger arises, is of such a character, or occurs at such a time, that the employer cannot reasonably be expected to have knowledge thereof, it is the duty of the employee to give him notice, and the neglect of such duty exempts the employer from responsibility.

The plaintiff's offer met this requirement. He proposes to prove that he notified the superintendent and foreman of the dangerous character of the switch in question. It is objected, however, that this would not be sufficient, because notice to a subordinate, however extensive his authority, is, after all, but notice to a fellow-servant, and therefore not binding upon the master. In ordinary cases such is undoubtedly the rule, but its strict application, in the case of corporations, such as the defendant, representing a multitude of shareholders, is impracticable. Hence we approve of the doctrine announced in the case of Frazier *v.* Penna. Railroad Co., already referred to, that it is not the company, but the officer to whose care is committed this particular department of its business, who is expected to use ordinary care in the conduct thereof, and whose negligence therein is the negligence of the company. It is apparent from this authority, that the proper person to notify, of the defect complained of, in the case in hand, was the superintendent of the defendants' works.

[Patterson *v.* Pittsburg & Connellsville Railroad Co.]

As his powers were plenary he could readily have applied the necessary remedy, and, if he neglected so to do, his default was the default of the company.

As the plaintiff's offer embraces the proposition of notice to the defendants' superintendent, it should have been admitted.

The judgment is reversed, and a new *venire* ordered.